UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOEL REYES,

      Plaintiff,

v.                                             Case No. 8:17-cv-2041-T-30AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, it is recommended that the Commissioner's decision be reversed and remanded.

**I.**

**A.**     **Procedural Background**

Plaintiff filed an application for SSI (Tr. 137-42). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 42, 62-75). Plaintiff then requested an administrative hearing (Tr. 76-78). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-41). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-25). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 134-36). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning September 7, 2013 (Tr. 137). Plaintiff stated that he obtained a seventh-grade education (Tr. 163). Plaintiff's past relevant work experience included work as a construction worker (Tr. 19, 38). Plaintiff alleged disability due to open heart surgery, pain, vomiting, accelerated heart rate, swelling in the feet, and headaches (Tr. 162, 185-86).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 10, 2013, the application date (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: congestive heart failure, coronary arteriosclerosis, hypertension, coronary artery disease, hyperlipidemia, hepatitis C, ischemic cardiomyopathy, chronic pancreatitis, and diabetes mellitus (Tr. 15). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, with the following limitations: could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 4 hours in an 8-hour workday; sit for 4 hours in an 8-hour workday; required a sit/stand option with an alternating interval of 2 hours; occasional push or pull with the upper extremities; occasionally stoop, crouch, and climb ramps, stairs, ladders, and scaffolds; frequently balance, kneel, and crawl; frequently reach waist to chest with both arms and reach above shoulder level with both arms; and constantly handle with both hands, finger with both hands, and feel (Tr. 15-16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could

be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence (Tr. 16-17). The ALJ further concluded that Plaintiff had a limited education and was able to communicate in English (Tr. 19-20).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 19). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a scale operator, label remover, and bakery worker (Tr. 20, 39). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §

416.920.[1] If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citations omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

---

[1] The cited references to the regulations pertain to those in effect at the time the decision was rendered.

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

### III.

Plaintiff argues that the ALJ erred by (1) failing to properly consider the opinion of a state agency medical consultant; (2) determining that Plaintiff was literate and had a limited education; and (3) finding that Plaintiff could perform a significant amount of jobs in the national economy. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.   Medical Opinion**

Initially, Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Dr. Gloria Hankins. In May 2014, Dr. Hankins, a state agency medical consultant, opined that Plaintiff could perform light work except that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights (Tr. 57-58).[2] Dr. Hankins noted that her RFC assessment was for "12 Months After Onset: 09/06/2014" (Tr. 57). Plaintiff contends that the ALJ erred because the ALJ ignored portions of the opinion presented by Dr. Hankins without

---

[2]  Under the regulations, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b).

5

explanation. Namely, Plaintiff argues that the ALJ did not take into consideration the statement regarding the duration of the opinion and, to the extent any confusion existed about the duration, the ALJ maintained a duty to further develop the record.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 416.927(c)(3). Further, the more consistent the medical opinion is with the record, the more weight that opinion will receive. 20 C.F.R. § 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. § 416.927(e)(2)(i). When considering the weight to afford state agency medical consultants, SSR 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. …
>
> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.

SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996).[3] In rendering the decision, the ALJ considered the opinion of Dr. Hankins but only afforded the opinion some weight (Tr. 19). In considering the opinion, the ALJ stated, in pertinent part:

> In looking at the opinion evidence, the undersigned notes that a State agency medical consultant opined that twelve months after onset he could perform work at the light exertional level but should avoid concentrated exposure to hazards (Exhibit 3A).
>
> ***
>
> In making this finding, some weight is given to the State agency medical consultant, as the opinion is generally supported by the evidence of record, including routine and conservative office visits and objective testing indicating initial improvement in ejection fraction. The undersigned notes, however, that a later ejection fraction was decreased, and new records were submitted, which necessitate an increase in limitations.

(Tr. 18, 19).

---

[3] The SSA published its "Revisions to Rules Regarding the Evaluation of Medical Evidence" on January 18, 2017, which significantly revised the consideration of medical evidence. 82 Fed. Reg. 5844. Since the revised rules did not become effective until March 27, 2017, such rules do not apply to the ALJ's March 29, 2016 decision.

7

Contrary to Plaintiff's assertion, the ALJ properly considered Dr. Hankins' opinion. As the ALJ discussed, Dr. Hankins' opinion regarding Plaintiff's ability to perform a limited range of light work comported with both the evidence of record and the ALJ's RFC assessment (Tr. 15-19, 216-329, 335-40, 341-43, 346-51, 354-73, 397-471, 477- 574, 575-92). Further, as noted in the decision, the ALJ increased the limitations beyond those identified by Dr. Hankins to account for decreased ejection fraction results dated after Dr. Hankins submitted her assessment (Tr. 19, 508, 576).

Plaintiff's contention that the ALJ ignored or failed to properly address the portion of Dr. Hankins' opinion regarding the duration of Plaintiff's limitations, and therefore required further development of the record by the ALJ or recontacting of Dr. Hankins by the ALJ, simply lacks merit. An ALJ has a basic obligation to develop a full and fair record, even where, as here, the claimant was represented by counsel. *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). "Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation and citation omitted). The decision to recontact a medical source or to order a consultative examination remains within the discretion of the Commissioner. *See, generally,* 20 C.F.R. § 416.920b(c). If the evidence is consistent but the Commissioner does not have sufficient evidence to determine whether a claimant is disabled, or, if after weighing the evidence, the Commissioner determines that a conclusion cannot be reached about whether the claimant is disabled, the Commissioner will determine the best way to resolve the inconsistency or insufficiency, including recontacting a treating physician or medical source or asking the claimant to undergo a consultative examination. 20 C.F.R. § 416.920b(c)(1) & (3).

In this instance, the evidence relied upon by the ALJ was neither inconsistent nor insufficient. Rather, as the decision indicates, the record contained sufficient evidence, including Dr. Hankins' assessment, for the ALJ to make an informed decision. The failure to specifically address the duration of the limitations set forth by Dr. Hankins did not create any sort of evidentiary gap, especially where the ALJ specifically noted that he included additional limitations beyond those set forth by Dr. Hankins based on subsequent evidence submitted by Plaintiff. As such, the ALJ did not need to recontact Dr. Hankins nor seek any further clarification to correct any inconsistencies or insufficiencies in the record. Accordingly, the ALJ did not err in that regard.

### B.  Literacy

Plaintiff next argues that the ALJ erred by finding that Plaintiff was literate and had a limited education, when Plaintiff contends that he can neither read or write in English. As the decision indicates, the ALJ considered Plaintiff's education and ability to communicate in English (Tr. 19-20). In doing so, the ALJ found:

> **7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).**
>
> The undersigned notes that the claimant testified he had difficulties reading and writing in English, but this is not supported by the evidence of record. Specifically, the undersigned notes the claimant was able to complete several questionnaires in connection with his application (See Exhibit 4E; 7E).

(Tr. 19-20).

Under the regulations, the Social Security Administration ("SSA") considers a seventh grade through eleventh grade level of formal education to constitute a limited education. 20 C.F.R. § 416.964(b)(3). During the hearing and in filling out his application for benefits, Plaintiff stated that he completed the seventh grade (Tr. 33, 163). In applying for benefits, Plaintiff stated that he attended school in Puerto Rico and completed the seventh grade but took

9

"special classes for slow learning and reading" (Tr. 167). Taking Plaintiff's statements in isolation, the ALJ did not err in finding that Plaintiff possessed a limited education based upon Plaintiff's admission that he completed the seventh grade. Given the findings below, however, in considering Plaintiff's educational factors upon remand, the ALJ should inquire further, to the extent necessary, as to whether Plaintiff in fact achieved a seventh-grade education and thus possessed a "limited education." *See* 20 C.F.R. § 416.964(b) ("Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower.").

The ALJ's main error lies in his conclusion that Plaintiff maintained the ability to communicate in English. Under the regulations, "illiteracy" is defined as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). The SSA considers a claimant illiterate where such individual cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. 20 C.F.R. § 416.964(b)(1). The regulations also describe an "inability to communicate in English" as a vocational factor in determining a claimant's ability to work, specifically stating:

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 416.964(b)(5).

Initially, in his application on October 9, 2013, Plaintiff indicated that he could speak, read, and understand English and that he filled out the application himself (Tr. 161-62). On the other hand, at the administrative hearing, Plaintiff testified that he could not write in English, could only read a little bit of a newspaper if he tried to read it, and required assistance from his

10

brother to fill out paperwork in English (Tr. 37). Despite Plaintiff's statement on his initial disability report form, and despite the ALJ's finding to the contrary, the record supports Plaintiff's statements regarding his difficulties reading, writing, and communicating in English. For example, the SSA disability report from the field office on October 9, 2013 indicates that Plaintiff "was with his brother and his brother had to get on the phone several times to help answer the questions for him" (Tr. 153). Indeed, the SSA field office representative indicated in the affirmative as to whether Plaintiff experienced difficulties understand, talking, and answering (Tr. 153). Although the SSA field office representative cited to possible medication side effects, another SSA field office representative again documented Plaintiff's issues communicating on March 12, 2014 (Tr. 183). Namely, the SSA field office representative noted that Plaintiff demonstrated difficulty talking and could not "get his thoughts together and did not understand a lot of questions" and that Plaintiff's "brother helped him alot [*sic*]" (Tr. 183). Moreover, the Work History Report submitted by Plaintiff on February 6, 2014 explicitly indicates that his brother completed the form on behalf of Plaintiff (Tr. 161, 175-77). Review of the transcript from the administrative hearing further confirms Plaintiff's limited command of the English language and ability to communicate effectively. Throughout the hearing, Plaintiff repeatedly indicated that he did not know the proper English word or phrase to describe or explain his symptoms (Tr. 34-37).

      Notwithstanding the foregoing, the ALJ concluded that Plaintiff maintained the ability to communicate in English based upon the completion of two questionnaires (Tr. 19-20, 169-72, 178-81). Neither of the pertinent questionnaires indicates whether Plaintiff filled them out himself or with the assistance of his brother or any another individual. The ALJ's reliance on the mere presence of those two completeted questionnaires alone as an indication of Plaintiff's proficiency in the English language, especially against the backdrop of repeated instances of

Plaintiff's inability to communicate effectively in English, was improper and in error. Such error is especially noteworthy in light of the fact that the VE testified that an inability to read or write in English would erode the occupational base because, though reading and writing were not significant parts of the jobs identified, reading and writing would constitute part of all the jobs identified by the VE as other work available for Plaintiff to perform (Tr. 40). Accordingly, it is recommended that the matter be reversed and remanded for the ALJ to reconsider Plaintiff's literacy and ability to communicate in English.

### C. Other Jobs

Finally, Plaintiff contends that the ALJ erred in relying on the VE's testimony regarding other jobs that Plaintiff could perform because the hypothetical posed to the VE did not include all the appropriate limitations. There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines and by using a VE. *Phillips*, 357 F.3d at 1239-40; *see* 20 C.F.R. Pt. 404, Subpart P, App. 2; *see* 20 C.F.R. § 416.966(e). Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *See Phillips*, 357 F.3d at 1242.

If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a

12

VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

In this instance, the ALJ posed the following hypothetical to the VE:

All right. For our hypothetical question assume an individual that's the same age as the Claimant. They have the same education and vocational background. The individual can lift and/or carry 20 pounds occasionally and 10 pounds frequently. They can stand and/or walk for four hours in an eight[-]hour day. They can sit for four hours in an eight[-]hour day. They require a sit/stand option with an alternating interval of one to two hours.

They can occasionally push and pull with the upper extremities. They can occasionally climb ramps and stairs. They can occasionally climb ladders and scaffolds. They can frequently balance. They can occasionally stoop. They can frequently kneel. They can occasionally crouch. They can frequently crawl. They can frequently reach waist to chest with both arms. They can frequently reach above shoulder level with both arms.

They can constantly handle with both hands, constantly finger with both hands, and constantly feel. With those limitations, would a person be able to perform any of the Claimant's past work?

(Tr. 38-39). In response, the VE indicated that Plaintiff could not perform his past work as a construction worker but could perform the requirements of such occupations as a scale operator, label remover, and bakery worker (Tr. 39). In formulating a hypothetical to a VE on remand, the ALJ should consider any potential literacy and communicative limitations experienced by Plaintiff, given the findings set forth above regarding Plaintiff's potential communicative limitations with respect to illiteracy and an inability to communicate in English.[4]

## IV.

Accordingly, for the foregoing reasons, it is hereby

---

[4] Indeed, as noted above, the VE testified that an inability to read or write in English would erode the occupational base (Tr. 40), which could affect the outcome at step five of the sequential analysis.

RECOMMENDED:

1. The decision of the Commissioner be REVERSED and the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings as detailed herein.

2. The Clerk be directed to enter final judgment in favor of Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 17th day of January, 2019.

*[signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

cc:   Hon. James S. Moody, Jr.
      Counsel of Record

14